## GARDNER BREWER *vs.* CHELSEA MUTUAL FIRE INSURANCE COMPANY.

It is no evidence of waiver of a by-law of a mutual fire insurance company, requiring the assured, before the delivery of any policy, to pay such premium and give such deposit note as the president and directors shall from time to time determine, that the policy was made out and recorded in the company's books, pursuant to an agreement between the person to be insured and the president of the company; that the directors had previously voted " that the premiums on all policies shall be payable within thirty days from the date of said policies, and if not paid within sixty days the policies shall be considered cancelled; " that, both before and after sixty days from the date of this policy, the president and secretary requested this person to pay the premium, without suggesting any invalidity of the policy; and that, after a loss of the property insured, an assessment was laid to cover it.

ACTION OF CONTRACT upon a policy of insurance, dated the 1st of March 1857, made by the defendants to George W. Gerrish, for four years, upon a house in Cedar Street in Chelsea. " under the conditions and limitations expressed in" the by-laws annexed to the policy, and " payable, in case of loss, to Gardner Brewer," mortgagee.

Two of those by-laws were as follows: " ART. 20. Each person or company, by its agent, upon the execution of his, her or

their policy or policies, and before the same shall be delivered, shall pay such premium,.and give such note for deposit, as the president and directors shall from time to time determine." " Art. 22. These regulations may be altered at any annual meeting, or at any legal meeting of the company, called for that purpose, by the majority of the members present."

At the trial in the superior court of Suffolk, at May term 1858, before *Morton*, J., it appeared that on the 11th of December 1854, the defendants' board of directors, Gerrish being a member and present, " Voted, That the premiums on all policies shall be payable within thirty days from the date of said policies, and if not paid within sixty days, the policies shall be considered cancelled."

The following facts were admitted: Gerrish had formerly procured from the defendants several policies of insurance upon this building and other estates in Cedar Street in Chelsea, of which he owned the equity of redemption, payable in case of loss to the mortgagees, which expired on the 1st of March 1857. A few days before that day the defendants' president informed Gerrish that the policies were about to expire, and asked him if he wanted them renewed ; and it was then orally agreed between them, that the policies should be renewed for the same amounts, for the term of four years from the 1st of March 1857, and payable, as before, to the mortgagees. Pursuant to this agreement, policies were written and signed by the president and secretary of the defendants, in the usual form, all dated March 1st 1857, and recorded in the defendants' books.

There was evidence tending to show that it was likewise orally agreed at this time, between Gerrish and the president, that the latter should take the policies, when made out, to Gerrish's office in Boston ; and that he did take over some of the policies, for which Gerrish paid the premiums and signed the deposit notes ; that Gerrish did not examine them, but requested the president, who occupied an adjoining office, to deliver them to the mortgagees, which the· president did ; and that Gerrish supposed all the policies were brought over.

The defendants' president testified that, upon agreeing to

insure, he generally entered the agreement in his memorandum book, and that he then considered the property insured.

It appeared that the policy now in suit and two others made at the same time were never delivered, and that the premiums and deposit notes therefor were never paid or given, but that the policies were executed and ready for delivery; and that on the 9th of June 1857, the buildings described in these three policies were destroyed by fire.

There was evidence tending to show that Gerrish was requested by the president and secretary, both before and after the 1st of May 1857, to pay for these three policies, and replied that he would do so soon; but that neither the president nor secretary ever told Gerrish that the policies would be cancelled if he did not pay, or ever told him that he was not insured. There was evidence that the plaintiff's agent called on the president and secretary after the fire, in regard to the insurance, and was told by the secretary that he must see the directors before delivering the policies, and by the president that the premium could be taken out of the loss, but that he wished to see the directors before paying; and that on the 25th of June Gerrish called on the secretary and asked for the three policies and tendered the premiums and deposit notes therefor, and that the secretary was in the act of delivering them, when one of the directors told him he had better not do so.

It was admitted that on the 11th of August 1857, an assessment was laid by the defendants for the loss under the three undelivered policies, of which Gerrish, who was largely insured by the company on other risks, paid his proportion.

The defendants requested the presiding judge to rule and instruct the jury, that " the by-laws of the company were obligatory and binding, both upon its officers and upon all persons who became members of the company; that the officers of the company could not abrogate the by-laws or waive the provisions thereof, so as to make a contract of insurance, which should conflict therewith; and that, as the twentieth article of the by-laws of the company required that the premium should be paid and the deposit note given before any policy should be delivered,

and as no premium had been paid or deposit note given, and no delivery of the policy made, this action could not be maintained."

But the judge refused so to rule and instruct the jury; but did rule and instruct them " that, in order to entitle himself to a verdict, the burden of proof was upon the plaintiff, to show that the defendant company, for a valuable consideration, made a contract with Gerrish to insure fifteen hundred dollars on the house in question, payable, in case of loss, to the plaintiff, and that a memorandum in writing thereof was made and signed by the defendant company or its authorized agents; that such contract, to be valid, must be upon a valuable consideration; and that a valid, absolute and unconditional promise by Gerrish, to pay the premium and sign the policy note, would be a sufficient consideration; that such contract must be unconditional; and that if the twentieth by-law and the vote of December 11th 1854 were known to Gerrish, they would affect and control the contract, making it a conditional contract; and as the conditions thus imposed had not been complied with, the plaintiff could not recover, unless the jury were satisfied that a compliance with their provisions had been waived by the defendant company, and that it was not the intention of the parties that such provisions should affect and become a part of their contract;" " that, as the said by-law and vote were passed for the benefit and protection of the company, the company could waive them; and that it was not necessary that the waiver should be by a formal vote of the company; but that a waiver by the officers and agents charged with the direction and control of the affairs of the company would be binding upon the company; and if the jury were satisfied, either by a direct vote or a verbal agreement, or the acts and course of dealing of such officers, indicating such intent, that such officers intended to and did waive said by-law and vote, and that the said officers and Gerrish did not mean to have the by-law and vote apply to their contract, it would not apply;" and " that, if the jury were satisfied, upon all the evidence, that the defendant corporation made and executed a policy of insurance, such as is declared on, and that it was the

intention of the said officers and of Gerrish, that the policy should attach and become an existing, operative, unconditional contract of insurance, and that the company did waive the said by-law and vote, by their officers as aforesaid, and said contract continued in full force to the time of the fire, the plaintiff might maintain this action on the policy itself, though there had been no actual delivery of it." The jury thereupon found a verdict for the plaintiff, and the defendants alleged exceptions.

*J. P. Healy,* for the defendants.

*J. G. Abbott & J. D. Ball,* for the plaintiff. The ruling of the court, that if it was the intent of both parties that the policy should be a valid contract, notwithstanding the premium had not been paid, or the deposit note given, and if it was designed to waive the by-law, requiring such note before delivering the policy, the plaintiff was entitled to recover, was correct.

1. It was accompanied by a ruling that there must have been a consideration for such policy, and that an unconditional promise by Gerrish to pay the premium and sign the deposit note was a sufficient consideration, provided the conditions of the by-law and vote of the directors had been waived. *Commercial Mutual Marine Ins. Co.* v. *Union Mutual Ins. Co.* 19 How. 321. *Warren* v. *Ocean Ins. Co.* 16 Maine, 439. *Loring* v. *Proctor,* 26 Maine, 18. *Blanchard* v. *Waite,* 28 Maine, 51. *Bragdon* v. *Appleton Mutual Fire Ins. Co.* 42 Maine, 259.

2. A by-law and vote may be waived by the officers of a corporation, without a vote of either stockholders or directors, as far as it concerns their dealings with third parties. Mere silence, in the case of insurance companies, has been holden to be a sufficient waiver. As where a by-law requires a statement of the loss to be made under oath, in a certain specified manner, if the assured makes the statement in an entirely different manner, and no objection is made by the insurance company, their silence is a waiver of the requirements of the by-law, whether such incomplete statement is known to a majority of the directors or not. *New England Marine Ins. Co.* v. *De Wolf,* 8 Pick. 56. *Clark* v. *New England Mutual Fire Ins. Co.* 6 Cush. 342, and cases cited. *Liberty Hall Association* v. *Housatonic Mutual Fire*

*Ins. Co.* 7 Gray, 261. *Brooklyn Baptist Church* v. *Brooklyn Fire Ins. Co.* 18 Barb. 69, and 19 N. Y. 305. *New York Central Ins. Co.* v. *National Protection Ins. Co.* 20 Barb. 468. *Goit* v. *National Protection Ins. Co.* 25 Barb. 189. *Union Mutual Fire Ins. Co.* v. *Keyser*, 32 N. H. 313. *Wing* v. *Harvey*, 5 DeGex, Macn. & Gord. 265. *Sheldon* v. *Connecticut Mutual Life Ins. Co.* 25 Conn. 207. Cases cited above from the Maine reports.

In *Hale* v. *Mechanics' Mutual Fire Ins. Co.* 6 Gray, 169, the waiver relied on was the act of the president alone, not of the whole board of directors, through whom all the company's contracts with the public were made. *Melledge* v. *Boston Iron Co.* 5 Cush. 175.

3. A delivery of the written contract is not absolutely necessary in order to make it valid and binding, where it is merely executory, as in the case of a policy of insurance. It is sufficient that it is executed and intended by both parties as the evidence of the contract made between them. *Kohne* v. *Ins. Co. of North America*, 1 Wash. C. C. 93. *Hamilton* v. *Lycoming Mutual Ins. Co.* 5 Barr, 339. *Tayloe* v. *Merchants' Fire Ins. Co.* 9 How. 390. *Sheldon* v. *Connecticut Mutual Ins. Co.* 25 Conn. 207. Cases cited under first head.

BIGELOW, J. By the twentieth article of the by-laws of the corporation, by which the rights of the parties under the contract are regulated, it is provided that, before the policy shall be delivered, the assured shall pay such premium and give such deposit note as the president and directors shall determine. The effect of this stipulation was, that the contract of insurance should not be completed nor the policy take effect until such premium was paid and such note given. It is admitted in the present case, that the assured had not complied with this by-law.

The plaintiff however seeks to avoid the effect of such non-compliance, and to maintain the policy as a valid contract, on the ground that this stipulation in the by-laws for the payment of the premium had been waived by the officers of the company. On looking into the evidence, which is fully reported in the exceptions, it does not appear that there was

any proof of waiver by the corporation. The case therefore comes directly within the recent decision of this court in *Hale v. Mechanics' Mutual Fire Ins. Co.* 6 Gray, 169. The president, secretary and board of directors were all special agents, with limited powers, and had no authority to dispense with the by-laws. Those could be changed only in pursuance of the twenty second article, at an annual meeting, or at a legal meeting of the company called for the purpose, by a vote of a majority of the members present.

The decisions cited by the plaintiff's counsel, in which the doctrine of waiver has been applied to contracts of insurance, and it has been held that the officers or agents of corporations might alter or dispense with the stipulations contained in the contract, are cases where the policies have been issued by companies organized with a capital stock, divided into shares and represented by a general agent or officer. But such decisions do not apply in a case like the present, where the policy is issued by a company established on the mutual principle, in which the by-laws are made to fix and regulate, by the same stipulations in every policy, the rights of all the assured alike, and the assured are themselves members of the company and as such have notice of every provision contained in their by-laws.

There is also a class of cases in which it has been held that companies established on the mutual principle may be bound by the acts of their officers in waiving the formalities of preliminary proof of loss as required by the by-laws. But those cases are distinguishable from the present. Such stipulations do not touch the substance or essence of the contract, or affect its validity, but relate only to the form or mode in which the liability of the company shall be ascertained and proved. Besides, such preliminary proof must be necessarily submitted to the officers of the corporation, who must pass on its sufficiency, and it therefore comes within the scope of their authority to say whether proof of the loss is sufficient.

*Exceptions sustained.*